# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

YAHYA FAROOQ MOHAMMAD, et al.,

    Defendants.

Case No. 3:15-cr-358
CHIEF JUDGE EDMUND A. SARGUS, JR.

## OPINION AND ORDER

Defendant Ibrahim Zubair Mohammad ("Ibrahim") has filed a Renewed Motion for Release from Custody [ECF No. 215]. For the following reasons, that Motion is **DENIED**.

### I.

Ibrahim was indicted on September 30, 2015, along with his co-Defendants Yahya Farooq Mohammad, Asif Ahmed Salim, and Sultane Roome Salim, and charged with (Count 1) conspiracy to provide and conceal material support to terrorists, in violation of 18 U.S.C. § 2339A; (Count 2) providing material support to terrorists, in violation of 18 U.S.C. § 2339A; (Count 3) conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (brought against Farooq and Ibrahim only); and (Count 4) conspiracy to obstruct justice, in violation of 18 U.S.C. 1512(k). (Indictment at 12–72 [ECF No. 1].)

Following his arrest on November 5, 2015, Ibrahim was arraigned before Magistrate Judge James Knepp. The Government moved for detention; Ibrahim, in turn, waived his right to a detention hearing but reserved the right to request a hearing at a later date. (Dec. 1, 2015 Order of Detention at 1 [ECF No. 20].) On February 15, 2016, Ibrahim moved for pretrial release from custody. (Mot. for Release at 1 [ECF No. 46].) The Court held a hearing on March 1, 2016, and,

two days later, issued an Order of Detention denying Ibrahim's request for pretrial release. (Mar. 3, 2016 Order of Detention at 2, 6 [ECF No. 59].)

Currently before the Court is Ibrahim's March 13, 2017 Renewed Motion for Release from Custody. Ibrahim brings his Renewed Motion because the circumstances surrounding his detention have purportedly changed since his prior detention hearing. (Renewed Mot. for Release at 3 [ECF No. 215].) Ibrahim proposes four conditions for his requested pretrial release, which allegedly assure his appearance at all proceedings and the safety of the public:

1. Mr. Mohammad will reside with his wife, their four children ages 3-9, and his father-in-law, at an address within the Northern District of Ohio, Western Division. Mr. Mohammad's wife and father-in-law will serve as custodians.

2. Mr. Mohammad will seek employment.

3. Mr. Mohammad will be subject to home confinement, electronic location monitoring, curfew, and other standard restrictions required by 18 U.S.C. § 3142(c), including surrendering his passport and the passports of his wife, children, and father-in-law.

4. Mr. Mohammad will execute a $250,020.00 appearance bond, secured by $150,020.00 cash deposit with the Clerk of Court and real estate located at 13830 Abbey, Sugarland, Texas 77498.

(*Id.* at 1–2.) These proposed conditions differ from Ibrahim's previous proposed conditions in that he offers to post a higher bond (an increase of roughly $20,000) and that the bond is secured by cash and property in Texas (rather than cash and, if required, property in the Toledo area). (*See* Mot. for Release at 1–2.) In further support of his request for pretrial release, Ibrahim argues that his continued detention violates his Fifth Amendment right to due process. (Renewed Mot. for Release at 3, 9–10, 15–16.)

**II.**

**A.     Reopening Ibrahim's Detention Hearing**

A detention hearing may be reopened if (1) information exists that was unknown to the

2

defendant at the time of the hearing and (2) the new information has a material bearing on the issue of whether there are conditions of release that will reasonably assure the defendant's appearance at trial and the safety of any other person in the community. 18 U.S.C. § 3142(f); *see United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012). For purposes of reopening a detention hearing, "[n]ew and material information . . . consists of something other than a defendant's own evaluation of his character or the strength of the case against him." *United States v. Jerdine*, No. 1:08 CR 00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009). New and material information consists of "truly changed circumstances, something unexpected, or a significant event." *Id.*

Here, Ibrahim argues that he has acquired new and material information that justifies reopening his detention hearing: (i) "the Government's underwhelming proof" against him, as purportedly revealed through discovery; (ii) the extended duration of his detention, which allegedly violates his due process rights; and (iii) the "specious reasoning and implicit bias in favor of the Government" found in the prior Order of Detention [ECF No. 59]. (Renewed Mot. for Release at 15–16 [ECF No. 215].)

None of this, however, constitutes new and material information as contemplated under 18 U.S.C. § 3142(f). A defendant's own evaluation of the strength of the case against him, as noted above, is typically insufficient to justify reopening the defendant's detention hearing. *See Jerdine*, 2009 WL 4906564, at *3. The extended duration of Ibrahim's detention does not violate his due process rights (as explained below). And the alleged deficiency in the prior Order of Detention, even if accepted as true, is not new information that has a material bearing on whether Ibrahim will appear for trial or whether Ibrahim poses a threat to the community. *See Watson*, 475 F. App'x at 600. The Court, accordingly, declines to reopen Ibrahim's detention hearing.

3

### B. Ibrahim's Due Process Rights

"Pretrial detention violates the Fifth Amendment when it amounts to 'punishment of the detainee.'" *Watson*, 475 F. App'x at 601 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "'Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). Courts determine on a case-by-case basis whether pretrial detention is unconstitutionally excessive. *Id.* This consideration involves four factors: "(1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial; (3) the gravity of the charges; and (4) the strength of the evidence upon which the detention was based." *Id.*

Applied here, these factors indicate that Ibrahim's pretrial detention does not violate his due process rights.

#### 1. Length of Detention

Ibrahim has been detained for approximately 18 months, and he will have been detained for nearly 22 months by the time he goes to trial on August 21, 2017. (*See* Renewed Mot. for Release at 10 [ECF No. 215].) This lengthy period of pretrial detainment weighs in favor of finding a due process violation.

As the Sixth Circuit has explained, however, "[t]he length of pretrial detention is not dispositive, and will, by itself, rarely offend due process." *Watson*, 475 F. App'x at 601. This is a complex case involving filings under the Classified Information Procedures Act ("CIPA") and evidence derived from Foreign Intelligence Surveillance Act ("FISA") surveillance. The case, moreover, involves not just traditional FISA surveillance, but also surveillance under Section 702 of the FISA-Amendments Act ("FAA")—a provision that has been litigated in a limited number of other criminal cases. In other complex cases, courts have found no due process

4

violation where the pretrial detention extended considerably longer than 22 months. *See, e.g.*, *United States v. El-Hage*, 213 F.3d 74, 79–81 (2d Cir. 2000) (finding that 30 to 33 months of pretrial detention did not violate due process); *United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994) (finding that 27 months of pretrial detention did not violate due process); *United States v. Millan*, 4 F.3d 1038, 1049 (2d Cir. 1993) (finding that a 30 to 31 month period of pretrial detention did not violate due process); *United States v. Gonzalez*, 995 F. Supp. 1299, 1304 (D.N.M. 1998) (finding that 35 to 37 months of pretrial detention did not violate due process). The Court must therefore look to the other factors to determine whether Ibrahim's due process rights have been violated.

### 2. Prosecution's Responsibility for the Delay

Ibrahim contends that the Government is responsible for much of the delay in the case proceeding to trial because the Government purportedly changed its mind on whether classified evidence would be involved in the case. (*See* Renewed Mot. for Release at 11 [ECF No. 215].) The Court disagrees with this assessment. The Government has consistently represented that it does not intend to introduce classified evidence at trial. And contrary to Ibrahim's insistence, the Government's notice of intent to use evidence acquired through FISA surveillance is not a reversal of this position. The evidence acquired through FISA surveillance that the Government proposes to use at trial is not classified. And the delay relating to the Government's use of evidence acquired through FISA surveillance is primarily a function of Defendants (Ibrahim included) moving to suppress the evidence.

In making this point, the Court does not criticize Ibrahim for challenging the admission of evidence acquired through FISA surveillance. The Court makes this point to clarify that the Government is not solely responsible, or even primarily responsible, for the delay in this case.

5

The case involves four defendants, extensive evidence dating back more than a decade, and complex legal issues. The case, moreover, suffered a considerable delay when Ibrahim's co-Defendant, Yahya Farooq Mohammad ("Farooq"), was indicted for his alleged scheme to murder the former presiding district judge in this matter. (*See* Order of Recusal at 1 [ECF No. 107].) Farooq's indictment led to Judge Zouhary recusing himself from the case and to the appointment of the undersigned to this matter. (*See id.*)

Given the limited connection between the Government's actions and the delay in this case, this second factor weighs against the Court finding a due process violation.

### 3. Gravity of the Charges

As Ibrahim acknowledges, the charges brought against him are grave. (*See* Renewed Mot. for Release at 11 [ECF No. 215].) The Government accuses Ibrahim of (Count 1) conspiring to provide and conceal material support to terrorists, (Count 2) providing material support to terrorists, (Count 3) conspiring to commit bank fraud, and (Count 4) conspiring to obstruct justice. (Indictment at 12–72 [ECF No. 1].) Counts 1 and 2 are punishable by up to 15 years in prison each. 18 U.S.C. § 2339A(a). Count 3 is punishable by up to 30 years in prison. 18 U.S.C. §§ 1344, 1349. And Count 4 is punishable by up to 20 years in prison. 18 U.S.C. 1512. The statutory presumption of detention for Counts 1 and 2 further reinforces the gravity of these charges. *See* 18 U.S.C. § 3142(e)(3)(C). This third factor weighs against the existence of a due process violation.

### 4. Strength of the Evidence

Under the final factor—the strength of the evidence on which detention is based—courts typically evaluate the evidence of the defendant's risk of flight and danger to the community. *See, e.g., United States v. Kinison*, No. 5:12-CR-57, 2012 WL 4433296, at *6–7 (E.D. Ky. Sept.

6

24, 2012) (considering the nature of the defendant's alleged crimes and his danger to the community); *United States v. Meeks*, No. 10-20123, 2011 WL 4407448, at *8–9 (E.D. Mich. Sept. 22, 2011) (noting that "a finding of dangerousness is enough to justify pretrial detention"); *United States v. Daniels*, No. 06-20234, 2008 WL 324123, at *3–4 (E.D. Mich. Feb. 6, 2008) (considering the strength of the evidence indicating a risk of flight). In analyzing this final factor, other courts have evaluated the strength of the evidence supporting the Government's charges against the defendant. *See, e.g., Watson*, 475 F. App'x at 602–03 (considering both "the district court's suppression of evidence and statements" and "the issue of [the defendant's] dangerousness").

In his analysis, Ibrahim directs the Court toward the second line of inquiry: the strength of the evidence supporting the Government's charges against him. (Renewed Mot. for Release at 11–15 [ECF No. 215].) Ibrahim identifies purported weaknesses in Counts 1 and 2, including: (i) "the absence of any evidence of the predicate offenses necessary to sustain a conviction for 18 U.S.C. § 2339A"; (ii) "the uncertainty of the purpose of the money supposedly sent" to Anwar al-Awlaki; (iii) the possibility that no money ever reached al-Awlaki; and (iv) the Government's purported reliance on protected speech as substantive evidence of a crime. (Renewed Mot. for Release at 11–15.)

Ibrahim's arguments fall flat. He does not address two of the four crimes he is charged with violating; Ibrahim fails to identify any weaknesses in Counts 3 and 4. (*See* Renewed Mot. for Release at 11–15.)

Further, Ibrahim can be convicted under § 2339A even if he did not commit a "predicate offense[]." (*See* Renewed Mot. for Release at 12.) Section 2339A does not punish individuals for violating the federal laws enumerated in the statute. *See* 18 U.S.C. § 2339A(a); *see also United*

7

*States v. Hassoun*, 476 F.3d 1181, 1188 (11th Cir. 2007) ("[T]he Government need not prove all the elements of § 956, the object offense, in order to satisfy the elements of the substantive § 2339A charge."). Nor does it punish based on whether the recipient of the material support attempted to violate, or succeeded in violating, one of the enumerated federal laws. *See* 18 U.S.C. § 2339A(a); *see also Hassoun*, 476 F.3d at 1188 ("By its elements, § 2339A criminalizes material support given 'in preparation for' the object offense—clearly, the object offense need not even have been completed yet, let alone proven as an element of the material support offense."). Section 2339A punishes individuals who *provide*, or *conspire to provide*, "material support or resources . . . *knowing or intending* that they are to be used in preparation for, or in carrying out, a violation" of an enumerated federal law. 18 U.S.C. § 2339A(a) (emphasis added). The statute, in other words, punishes the action of providing or conspiring to provide material support or resources. 18 U.S.C. § 2339A(a). It punishes that action when the individual knows or intends that the material support or resources are to be used in preparation for, or in carrying out, a violation of an enumerated federal law. *Id.*

Ibrahim next argues that the Government will be unable to prove that the money supposedly sent to al-Awlaki was intended to finance acts of terrorism. (*See* Renewed Mot. for Release at 12.) Ibrahim may be right; the Government might fail to carry its burden of proof on this element. Ibrahim is incorrect, however, in asserting that the Government has not offered any evidence to suggest that the money purportedly given to al-Awlaki was intended to finance acts of terrorism. The Indictment contains numerous allegations from which a fact finder could conclude that Ibrahim's alleged monetary support was intended to finance acts of terrorism. *See, e.g.*, Indictment ¶¶ 39, 55, 67–68, 75, 93, 100, 150, 189–90, 244–45, 252, 254, 264 [ECF No. 1].)

8

Ibrahim also argues that the money he and the other Defendants supposedly sent to al-Awlaki may not have actually reached al-Awlaki. (*See* Renewed Mot. for Release at 13–14.) This assertion, if true, may undermine Count 2—the Government's allegation that Ibrahim and the other Defendants provided material support and resources to al-Awlaki. This assertion, however, does not undermine Count 1—the allegation that Ibrahim and the other Defendants *conspired* to provide material support and resources to al-Awlaki. Ibrahim could be found guilty of conspiring to provide material support and resources to al-Awlaki even if he and the other conspirators ultimately failed to achieve their alleged objective. *See United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999).

Finally, Ibrahim contends that the Government may not rely on protected speech as substantive evidence of a crime. (*See* Renewed Mot. for Release at 14.) But Ibrahim is mistaken. As the Sixth Circuit has stated: "'The First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.'" *United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993)). The Government cannot obtain a conviction by simply proving that a defendant talked with others about political or religious ideas. *Id.* But the Government can—as it does in this case—rely on those conversations as evidence of a defendant's criminal behavior. *See id.*

Although Ibrahim does not, in his due process argument, address the evidence relevant to his risk of flight, the Court briefly reviews that evidence, as it also weighs against the Court finding a due process violation. In his Order of Detention, Judge Zouhary found that no available term or condition of release would reasonably assure Ibrahim's further appearance. (Mar. 3, 2016 Order of Detention at 3 [ECF No. 59].) Judge Zouhary arrived at this conclusion based on the nature and circumstances of the offenses brought against Ibrahim, the weight of the evidence

9

against Ibrahim, and Ibrahim's history and characteristics. (*See id.* at 3–5.) Particularly important to Judge Zouhary's conclusion was Ibrahim's network of out-of-country friends and relatives. (*See id.* at 4.) As Judge Zouhary explained: "Though he has some ties to this District, his mother resides in India, two of his siblings live in the United Arab Emirates, and a third sibling lives in Washington. Defendant's wife has a network of extended cousins residing in the United Arab Emirates, England, New Zealand, and Pakistan, and friends in Egypt and Pakistan." (*Id.*) Also critical to Judge Zouhary's conclusion was the nature of Ibrahim's proposed cash bond: it would have comprised money from Ibrahim's father-in-law and approximately fifteen other individuals, most of whom are friends of Ibrahim's wife. (*Id.* at 5.) Judge Zouhary expressed his reservation with this proposed bond:

> Although the total sum is substantial, this Court disagrees with Defendant's counsel that the source of the funds is irrelevant. Money loaned by even the best of friends does not rise to the same level as a posting by a single family member, or by Defendant himself. "The purpose of bail is not served unless losing the sum would be a deeply-felt hurt to the defendant and his family; the hurt must be so severe that defendant will return for trial rather than flee." *United States v. Szott*, 768 F.2d 159, 160 (7th Cir. 1985) (per curiam). As presented to this Court, the financial impact on Defendant should he flee is limited.

(*Id.*) Ibrahim's ability to raise significant funds in a short period of time through his wife's contacts reinforced Judge Zouhary's determination that Ibrahim posed a flight risk. (*Id.*)

Since March 3, 2016, when Judge Zouhary issued his Order of Detention [ECF No. 59], the evidence indicating that Ibrahim poses a flight risk has not changed significantly. Ibrahim still has numerous relatives and friends outside of the country. And Ibrahim still has the ability to raise significant funds through his wife's contacts. In his Renewed Motion for Release from Custody, Ibrahim alters the composition of the collateral securing his proposed bond. This collateral, however, would still come from a variety of individuals: Ibrahim's wife and children (cash); Ibrahim's father-in-law (cash); two of Ibrahim's friends (cash); and a relative of

10

Ibrahim's wife (real estate). (Renewed Mot. for Release at 4 [ECF No. 215].) The financial impact on Ibrahim should he flee is, therefore, still limited.

In sum, although Ibrahim has been detained for roughly 18 months, his continued detention through the time of trial does not, at this juncture, violate his due process rights. The Court arrives at this conclusion based on the gravity of the charges against him, the strength of the evidence supporting his detention, and the Court's determination that the Government is minimally responsible for the delay in this matter.

### III.

For these reasons, Ibrahim's Renewed Motion for Release from Custody [ECF No. 215] is **DENIED**.

**IT IS SO ORDERED.**

___5-31-2017___
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**