UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,  Case No. 3:15-cr-358

    Plaintiff

v.  MEMORANDUM OPINION

Ibrahim Zubair Mohammad, et al.,

    Defendants

This matter is before me on Defendant Ibrahim Mohammad's second renewed motion for release from custody. (Doc. No. 266). The government opposes. (Doc. No. 275). I held a bond hearing on November 8, 2017, at which time I heard arguments and took the matter under advisement. For the reasons stated below, I deny Mohammad's motion for release. (Doc. No. 266).

## BACKGROUND

On September 30, 2015, Mohammad was indicted on one count of conspiracy to provide and conceal material support and resources to terrorists, one count of providing material support and resources to terrorists, one count of conspiracy to commit bank fraud, and one count of conspiracy to obstruct justice. (Doc. No. 1 at ¶¶ 25-298). He was arrested in Texas on November 5, 2015. Mohammed was arraigned in the Northern District of Ohio on December 1, 2015, at which time he waived his right to a detention hearing but reserved the right to later file a motion for release from custody and to request a hearing.

Mohammad filed his first motion for release from custody on February 15, 2016. (Doc. Nos. 46 & 49). The government opposed. (Doc. No. 50). A hearing was held on March 1, 2016. (Doc. No. 58). His motion was denied on March 3, 2016. (Doc. No. 59).

Mohammad filed a renewed motion for release on March 13, 2017. (Doc. No. 215). The government again opposed. (Doc. No. 217). That motion was denied on May 31, 2017. (Doc. No. 240).

Mohammad filed the instant motion for release on October 6, 2017. (Doc. No. 266). Voir dire is scheduled to begin on April 16, 2018, with a jury trial commencing on April 23, 2018. (Doc. No. 259).

## STANDARD

Mohammad argues that his continued detention violates his due process rights under the Fifth Amendment of the United States Constitution, because it "constitutes punishment without conviction." (Doc. No. 266 at 1).

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). So with respect to pretrial detention, such detention violates the Fifth Amendment when it "amount[s] to punishment of the detainee." *Id.* "Whether a pretrial detention is unconstitutionally excessive is determined on a case-by-case basis." *United States v. Watson*, 475 F. App'x 598, 601 (6th Cir. 2012).

The Sixth Circuit has adopted a four-factor analysis for use in determining whether a defendant's pretrial detention violates his due process rights. *Id.* I am to consider "(1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial; (3) the gravity of the charges; and (4) the strength of the evidence upon which the detention was based." *Id.*

## DISCUSSION

Mohammad claims his pretrial detention violates his due process rights, because his continued detention amounts to punishment. (Doc. No. 266 at 1). He contends each of the *Watson* factors weighs in his favor. (Doc. No. 266). The government disagrees. (Doc. No. 275). I will address each factor in turn below.

2

**Length of Detention**

"The length of pretrial detention is not dispositive, and will, by itself, rarely offend due process." *Watson*, 475 F. App'x at 601. And there is no predetermined number, in terms of months, at which point "detention in a particular case might become excessively prolonged." *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987). So this factor is considered in conjunction with the other factors. *Watson*, 475 F. App'x at 602.

By the time voir dire begins, Mohammad will have been in custody for more than twenty-nine months, nearly two-and-a-half years. (*Id.*; Doc. No. 275 at 4). The government conceded, both in briefing and at the hearing, that this is a long time to be detained absent conviction. (Doc. No. 275 at 4). The government therefore concedes that this prolonged period of detention weighs in Mohammad's favor. (*Id.*).

But, the government argues, "the length of detention is not so long as to be that rare case where the length of detention alone violates due process." (*Id.*). I agree. Both parties have identified cases where courts have found a range of detention periods to perhaps weigh in favor of the defendant's release but not which, by themselves, violated due process. *See, e.g.*, *United States v. Gonzales Claudio*, 806 F. 2d 334, 341 (2d Cir. 1996); *United States v. Omar*, 157 F. Supp. 3d 707, 716 (M.D. Tenn. 2016). Mohammad's detention falls within the range set by these cases.

Mohammad points to his lack of criminal history, that he is a family man and an engineer by trade, and that he has never been in jail – that he is "out of his element" – as bases for his argument that, for him, his prolonged detainment on the maximum security floor of the county jail is punitive. (Doc. No. 266 at 8). While I am neither oblivious to Mohammad's situation nor unsympathetic toward him, this case is such that, for reasons that will be discussed more fully below, the length of Mohammad's detainment does not alone establish a violation of his due process rights. But though it is not dispositive, I do find this factor weighs in Mohammad's favor.

3

**The Government's Responsibility for the Delay**

This factor of the analysis is not at issue. At the hearing, Mohammad conceded that the government bears no real responsibility for the delay in getting this case to trial. Neither does Mohammad bear any responsibility for the delay. The delay stems from the nature of the evidence the government legitimately seeks to introduce at trial, the motion practice it generates, and the actions of Mohammad's brother, Yahya Farooq Mohammad.

First, the government seeks to use evidence resulting from surveillance conducted pursuant to the Foreign Intelligence Surveillance Act and Section 702 of the FISA Amendments Act, and it has sought protective orders under the Classified Information Procedures Act. In response, Mohammad and his co-defendants have moved, among other things, to disclose and to suppress this evidence. The parties are engaging in legitimate endeavors, but these endeavors cause delays while complex issues are litigated and resolved.

Second, this case has been assigned to three different judges, a move necessitated by Farooq Mohammad. Farooq, while detained pending trial, attempted to hire a man to kill Judge Zouhary, the original presiding judge in this case. Once this attempt on his life became apparent, Judge Zouhary properly had to recuse himself, and given the potential for and appearance of conflict in reassigning the case to another judge of the Northern District of Ohio, the case was assigned to Chief Judge Sargus of the Southern District of Ohio. Farooq's case was subsequently severed from that of Mohammad and the other two co-defendants, and Farooq pled guilty. (Doc. No. 252). Once Farooq pled guilty, the case was then transferred back to this district and assigned to me. (Doc. No. 254). Each change in presiding judge brought with it more unavoidable delay. And again, these delays are not attributable to Mohammad, the government, or to the court. So because these delays are not attributable to the government, this factor weighs against a finding of a due process violation.

4

**Gravity of the Charges**

Mohammad argues against the gravity of the charges against him by pointing to weaknesses he perceives in the indictment and the government's evidence. (Doc. No. 266 at 9). Mohammad instead characterizes the indictment as being "long on Government disapprobation of free speech and short on any identified acts of terror at any stage, in any form or definition, or any expressed desire to commit or support one." (*Id.*). Mohammad also argues that his role as identified in the indictment is limited and that there is a lack of clarity concerning the criminal status of Anwar Al-Awlaki at the time Mohammad is alleged to have provided financial support to him. (*Id.*). Mohammad claims it is, instead, the weight of the label of terror and the presumption in favor of detention for those charges that drives the argument that the charges against him are grave.

The government disagrees, pointing to the statutory maximum sentences prescribed for each of the offenses, which range from fifteen to thirty years. (Doc. No. 275 at 8-9).

I find the gravity of the charges against Mohammad weigh against a finding of a due process violation. Mohammad is charged with conspiracy to provide and conceal material support and resources to terrorists, providing material support and resources to terrorists, conspiracy to commit bank fraud, and conspiracy to obstruct justice. (Doc. No. 1 at ¶¶ 25-298). And Mohammad is correct that the terrorism-related charges carry a presumption of detention under the Bail Reform Act. 18 U.S.C. § 3142(e)(3)(C). But that is not what drives my finding.

Looking to the alleged acts underlying the charges, I find the accusations against Mohammad to be grave. Specifically, Mohammad is accused of conspiring to contribute and contributing funds to Al-Awlaki for use in preparing for and carrying out "violent jihad" against the United States and the United States military. (Doc. No. 1 at ¶¶ 27 & 279). Mohammad is also accused of conspiring to obstruct justice by deleting emails and making false statements to the FBI in an effort to impair the investigation into his and his co-defendants' alleged crimes. (*Id.* at ¶¶ 270, 273, & 294). These allegations point to concerted efforts to aid in the taking of life and then an attempt to cover up

5

those efforts. These accusations are by their nature severe. So this factor weighs against a finding of a due process violation.

**Strength of the Evidence**

Concerning the final factor of this analysis, courts have approached it differently. Some have addressed the defendant's risk of flight and danger posed to the community. *See United States v. Kinison*, No. 5:12-cr-57, 2012 WL 4433296, at *6-7 (E.D. Ky. Sept. 24, 2012). Others have considered the evidence supporting the charges against the defendant. *See Watson*, 475 F. App'x at 602-03. Because Mohammad challenges the evidence in both categories, I will address both.

### Risk of Flight and Danger to the Community

Mohammad argues that the previous findings relating to his risk of flight and danger to the community were premised on the nature of the charges against him and not on the evidence. (Doc. No. 266 at 10). Mohammad takes issue with the finding that he has a network of family members and friends outside of the United States. (*Id.* at 11). And he argues that the previous judges did not consider that he was aware of the investigation into his activities, participated in a reverse proffer, and gave two proffers himself. (*Id.* at 11). Mohammad points out that not only did he not flee; he applied for citizenship. (*Id.* at 11-12).

Mohammad points to several reasons why he is not a flight risk. He has lived in the United States for most of his adult life, he has not been overseas in more than sixteen years, his most recent trip out of the country was a trip to Canada nearly ten years ago, and he has no significant overseas contacts except for his seventy-six-year-old mother who resides in India. (Doc. No. 266 at 10). Mohammad also points to his lack of income while detained, noting that his family has been dependent upon charity and that he would thus not have the money necessary to flee. (*Id.* at 12).

As for danger he may pose to the community, Mohammad argues he poses none. (Doc. No. 266 at 12). He argues that he has not engaged in any suspicious behavior or criminal activity prior to or after the events alleged in the indictment, that he stopped discussing Al-Awlaki approximately six

6

months before Al-Awlaki was designated a terrorist, that he never associated with any militant organizations or known terrorists, that the alleged conduct took place over eight years ago, that he severed ties with his brother after becoming aware of the investigation, and that any offered evidence of his dangerousness is unconvincing. (*Id.* at 12-13).

Judge Zouhary, in making the first decision regarding Mohammad's release, held a bond hearing, during which he took testimony and heard argument on the matter. (Doc. No. 58). He determined that Mohammad has family living abroad and one sibling living domestically in Washington. (Doc. No. 59 at 4). Judge Zouhary was unconvinced that Mohammad's wife and father-in-law "would take the necessary steps to control [Mohammad] and his activities." (*Id.*). Contrary to Mohammad's assertion, Judge Zouhary did consider Mohammad's knowledge of and participation in the investigation prior to indictment. (*Id.*). He considered that Mohammad made proffers and applied for citizenship but remained unconvinced that he would "continue to appear now that charges have been filed." (*Id.* at 4-5). Judge Zouhary also found the proposed bond lacking in its personal impact on Mohammad should he flee. (*Id.* at 5). Finally, Judge Zouhary found Mohammad a danger to the community based on the nature of the charges against him and the evidence supporting those charges. (*Id.* at 6).

In his review, Judge Sargus found that the evidence on which Judge Zouhary had based his order had not changed significantly. (Doc. No. 240 at 10). I find the same today. Mohammad argues against my predecessors' consideration of the evidence and the conclusions they reached, but he is unable to demonstrate that the evidence underlying their rulings has significantly changed. As such, I find no justification to reconsider the decision made by Judge Zouhary.

**Evidence Supporting the Charges**

In arguing against the strength of the evidence supporting the charges he faces, Mohammad begins by addressing the evidence underlying the charges of conspiracy to commit bank fraud and conspiracy to obstruct justice, as he had not done so in his previous motion for release. (Doc. No.

7

266 at 14). Pertaining to the charge of conspiring with his brother to commit bank fraud, Mohammad points to a lack of evidence supporting the charge. (*Id.*). Mohammad claims there is no evidence he had access to his brother's accounts, which means he did not know how much money his brother had, how much credit he had used or had available, or how his brother spent his money. (*Id.*). Mohammad says the bank records only show that he often helped his brother with the financial difficulties of living in a foreign country. (*Id.*).

Concerning the charge of conspiring with his three co-defendants to obstruct justice, Mohammad claims the evidence reveals he refused to take part in a lie proposed by one of his co-defendants. (*Id.*). Additionally, Mohammad points out that he twice met with government investigators and gave two proffer statements in which he fully disclosed his knowledge of events alleged to have taken place. (*Id.* at 14-15).

As for the terrorism-related charges, Mohammad largely repeats arguments he previously made before Judge Sargus. (*Id.* at 15-30). But he re-advances these arguments with the benefit of more government disclosures and more evidence, such as the Webster Report. Mohammad also attaches to his motion some evidence that was previously unavailable for review by Judge Sargus. (*Id.* at 25-30).

And Mohammad advances some new arguments. For example, Mohammad argues that the government rests its case on one of several possible interpretations of the word "jihad." (*Id.* at 19). One other such meaning is to purify oneself or wage a holy struggle for a moral goal. (*Id.* at 20). Mohammad points to an email in which he gave his definition of "jihad," which is that it is properly "done out of concern for non-Muslims who are considered part of God's family, not out of hatred or anger." (*Id.*).

Mohammad takes the government to task with respect to much of its evidence supporting the charges it has brought against him. The government responds by pointing to evidence favorable to its theory of the case and by arguing against Mohammad's interpretation of the evidence to which

8

he cites. (Doc. No. 275 at 11-23). But at the end of the day, though Mohammad is able to argue against the weight of the government's evidence, the fact remains that the government has a significant amount of evidence to offer against him in proving to the jury that he committed the crimes with which he is charged. Unlike in *Watson*, there are evidentiary matters still pending, including motions to suppress and to exclude the testimony of the government's expert. So until these motions are resolved, I presume this evidence is still available to the government. I find this factor weighs against finding a due process violation.

Taking the above into account in its entirety, I find Mohammad's continued detention does not violate his Fifth Amendment due process rights.

## CONCLUSION

Accordingly, Mohammad's second renewed motion for release from custody is denied. (Doc. No. 266).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge